## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIC SHRUM,                              :        Civil No. 3:20-cv-444
                                         :
              Plaintiff                  :        (Judge Mariani)
                                         :
       v.                                :
                                         :
CHERRI STEMPIEN, et al.,                 :
                                         :
              Defendants                 :

## MEMORANDUM

Plaintiff Eric Shrum ("Shrum"), an inmate who was housed at all relevant times at the

State Correctional Institution, Retreat, in Hunlock Creek, Pennsylvania ("SCI-Retreat"),

initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Docs. 1, 7). Named as

Defendants are, inter alia, John Wetzel, Cherri Stempien, Wayne Inniss, Francis Kirschner,

Bernadette Mason, Thomas Potsko, and Jennifer Mahally (collectively, the "Corrections

Defendants"). (Id.). Presently before the Court is the Corrections Defendants' motion (Doc.

20) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is ripe for

resolution.[1] For the reasons set forth below, the Court will grant the Corrections

Defendants' motion and dismiss the complaint with leave to amend.

---

[1]    While Shrum filed a brief in opposition to the Corrections Defendants' motion, he only
addressed Defendants' motion to dismiss the claims against Defendant Stempien. (See Doc. 23). Shrum
did not respond to any of the other arguments set forth in the Corrections Defendants' motion to dismiss.
(See id.). Because Shrum failed to respond to the remaining arguments, they are deemed unopposed.
See M.D. PA. LOCAL RULE OF COURT 7.6; see also Doc. 6, Standing Practice Order in Pro Se Plaintiff
Cases, at 2; Doc. 22 (directing Shrum to file a brief in opposition to the Corrections Defendants' motion and

I.    **Allegations of the Complaint and Supplement**[2]

Shrum sets forth an Eighth Amendment deliberate indifference claim based on the alleged inadequate treatment for his mental health condition at SCI-Retreat.  (Docs. 1, 7). He alleges that in February 2018, his psychiatric medication "plateaued and stopped working properly" and that his current medication "does nothing for him anymore."  (Doc. 7 ¶¶ 15, 43).  Shrum asserts that he is consistently depressed, has nightmares, trouble sleeping, extreme post-traumatic stress disorder ("PTSD"), anxiety, racing thoughts, and he feels contempt towards other inmates.  (*Id.*).

Shrum states that Defendant Stempien is a psychologist employed by the Pennsylvania Department of Corrections ("DOC") and is assigned to SCI-Retreat.  (*Id.* at ¶ 4).  He alleges that he "begged for help" from Defendant Stempien but she refused to help. (*Id.* at ¶ 15).  Shrum further alleges that he made "numerous request[s]" to Stempien to change his medication but she refused to change the medication.  (*Id.* at ¶¶ 18-19).  On one occasion, Shrum asserts that he told Defendant Stempien that he "wanted to play soccer

---

warning that failure to file an opposition brief would result in Defendants' motion being deemed unopposed).

Additionally, in his brief in opposition to the Corrections Defendants' motion, Shrum claims, for the first time, that he was placed in a cell with constant illumination in violation of his Eighth Amendment rights. (Doc. 23, p. 4).  It is well-settled that a plaintiff cannot amend the complaint in a brief in opposition to a motion to dismiss.  *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  As such, this claim is not properly before the Court and will not be considered.

[2]    For purposes of this Memorandum, the Court only includes the allegations pertaining to the Corrections Defendants.

with [another] inmate['s] [ ] head." (*Id.* at ¶ 20). He contends that Defendant Stempien never filed a report about this statement and no one took him seriously. (*Id.*).

On February 13, 2018, Shrum asserts that he was having a mental health breakdown and did not want to go to work. (*Id.* at ¶ 21). Defendant Stempien allegedly stated that "she would place the plaintiff in the Hole if he did not go to work." (*Id.* at ¶¶ 21-22). Shrum was later sent to the Restricted Housing Unit ("RHU"). (*Id.* at ¶¶ 22, 44). He alleges that Defendant Stempien violated his Eighth Amendment rights by refusing to change his medication and sending him to the RHU without new medication. (*Id.*). He believes that he should have been placed in a Psychiatric Observation Cell ("POC"), instead of being placed in the RHU. (*Id.* at ¶ 42). Shrum asserts that he has "no faith" in Defendant Stempien as a psychologist, and she has "bullied" him and threatened to place him in general population. (*Id.* at ¶¶ 42, 51). Shrum filed grievances wherein he requested a new psychologist. (*Id.*). In response to the grievances, he was advised that he was not being denied mental health treatment and he could not be assigned a new psychologist because such "assignments are based upon housing units." (*Id.*).

Shrum alleges that in September 2019, he applied for a job as a janitor in the medical facility but did not get the job. (*Id.* at ¶ 40). Shrum allegedly asked Defendant Stempien why he was turned down for the job as he believes "it was retaliation against him because he was sent to the Restricted Housing Unit because of his mental health breakdown back in 2018." (*Id.*). In January 2020, Shrum sent two additional request slips

seeking employment as a janitor in the medical department. (*Id.* at ¶ 41). Two different prison officials informed Shrum that he did not meet the requirements for the job. (*Id.*). Shrum alleges that he is "being blackballed due to his grievances against Ms. Cherri Stempien." (*Id.*).

On or about February 10, 2018, Defendant correctional officer Kirschner allegedly "harassed the plaintiff because he was having mental health breakdowns on the DB block." (*Id.* at ¶ 16). Shrum also alleges that Defendants Kirschner and Potsko "belittled" him by "calling him names and exposing his diagnosis to all other inmates who would listen." (*Id.*).

On February 13, 2018, Shrum alleges that Defendant correctional officer Potsko was mocking him because he could not work due to his mental breakdown, and he was rude and condescending. (*Id.* at ¶ 23). He further asserts that on February 14, 2018, Defendant Potsko was escorting Shrum to a grievance hearing and "pulled him while the plaintiff was in handcuffs and told the plaintiff that, 'if you pull, it will end very badly for you.'" (*Id.* at ¶ 24). Shrum also alleges that Defendant Potsko told inmates in the RHU that Shrum was a pedophile. (*Id.* at ¶ 32).

Shrum asserts that Defendant Inniss is the unit manager of SCI-Retreat. (*Id.* at ¶ 11). Around May 2018, Defendant Inniss allegedly threatened Shrum to withdraw two of the four grievances he filed against Defendant Potsko and staff. (*Id.* at ¶ 35). Shrum states that he "gave into the threats" from Inniss and withdrew two of the grievances. (*Id.*). He alleges that he was subsequently harassed by Defendant Inniss. (*Id.* at ¶ 36).

Shrum states that Secretary Wetzel "is legally responsible for the over all [sic] operations of the Department and each Institution under its jurisdiction including SCI-RETREAT."  (*Id.* at ¶ 5).

Shrum states that Superintendent Mason is legally responsible for the operation of SCI-Retreat and for the welfare of all inmates in the facility.  (*Id.* at ¶ 6).  Shrum also alleges that Superintendent Mason was involved in the review of several grievances filed by Shrum. (*Id.* at ¶ 42).

Shrum states that Superintendent's Assistant Jennifer Mahally is the grievance coordinator at SCI-Retreat and is responsible for all answers to inmate grievances.  (*Id.* at ¶ 13).

For relief, Shrum requests compensatory damages in the amount of $7,000,000 and punitive damages in the amount of $5,000 from each Defendant.  (Doc. 7, p. 17).

## II.  Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'"  *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## III.   Discussion

The Corrections Defendants move to dismiss the complaint and supplement on two

grounds: (1) failure to state a claim against any of the Corrections Defendants; and, (2)

failure to exhaust administrative remedies with respect to the claims against Defendants

Kirschner, Inniss, Potsko, Wetzel, Mason, and Mahally.[3]  (Doc. 21).

### A.   Claims against Defendant Stempien

#### 1.   *Eighth Amendment Deliberate Indifference Claim*

Shrum alleges that Defendant Stempien was deliberately indifferent to his serious

medical needs, in violation of the Eighth Amendment, for failing to adequately treat his

---

[3]   Although the Court placed the parties on notice that it may consider exhaustion in its role as
fact finder under *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013), (Doc. 26) (citing *Paladino v.
Newsome*, 885 F.3d 203 (3d Cir. 2018)), the Court will grant the Corrections Defendants' motion and
dismiss the complaint with leave to amend, without reaching the argument regarding exhaustion of
administrative remedies.

mental health condition.  (*See* Doc. 7).  The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.  *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000).  In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  The relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs.  *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842).  The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment

based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation. *Whitley v. Albers*, 475 U.S. 312 (1986). The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson v. Seiter*, 501 U.S. 294 (1991).

9

Prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10. Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

Shrum alleges that his prescribed medication was insufficient to treat his mental health condition and that, since psychologist Stempien refused to change his medication, Stempien has shown deliberate indifference to his medical needs. (Doc. 7 ¶¶ 15, 18, 19, 21, 22, 43). He further alleges that he repeatedly asked Defendant Stempien for treatment, she refused to provide treatment, and that she should have placed him on a different housing unit or in a POC. (Doc. 23, p. 1). Shrum acknowledges that Defendant Stempien treated him several times a month, and that she evaluated his condition, and in her professional opinion, he did not need to be moved to a secure location. (Doc. 23, p. 2; Doc. 23-2, p. 1).

The Court concludes that Shrum's allegations amount to, at most, a disagreement with Defendant Stempien's mental health treatment decisions.  A showing of deliberate indifference requires more.  *See Brown*, 903 F.2d at 278; *Pearson*, 850 F.3d at 535. Shrum's own allegations provide that he was treated by Defendant Stempien.  Shrum's dissatisfaction with his mental health treatment decisions simply does not rise to a constitutional violation.  It is well-settled that an inmate's objection to the type of medication provided by prison physicians is precisely the type of disagreement between an inmate and doctors over alternate treatment plans that falls well short of a constitutional violation. These claims are frequently rejected by the Courts.  *See, e.g.*, *Whooten v. Bussanich*, 248 F. App'x 324, 326-27 (3d Cir. 2007) (upholding grant of summary judgment that medical staff was not deliberately indifferent for treating migraine headaches with other medicines and only occasionally with the plaintiff's preferred drug); *Ascenzi v. Diaz*, 247 F. App'x 390, 391 (3d Cir. 2007) (upholding grant of motion to dismiss for failure to state a claim, finding no deliberate indifference where plaintiff was provided pain medication and antibiotics instead of narcotic pain relievers for his herniated cervical discs).  The most that can be said of Shrum's claim is that it asserts that Defendant Stempien's professional judgment was deficient.  As articulated above, this is not enough to rise to the level of a constitutional violation and courts will not second guess whether a particular course of treatment is adequate or proper.  *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)); *Spruill*, 372 F.3d

at 235 (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation). Moreover, there is no indication that Defendant Stempien's actions were based on an ulterior motive beyond providing routine patient care. *See Spruill*, 372 F.3d at 237 (noting that in order to state a deliberate indifference claim, a plaintiff should in some way "connect[ ] his factual allegations to the alleged mental states" of the defendants).

Regarding Shrum's request for a different psychologist, he was advised that "Psychologists are assigned based upon housing unit/wing, and your assigned Psychologist for AA Unit is PSS Stempien. You do not get to select which psychologist you will see." (Doc. 7-1, p. 8; *see also* Doc. 7, p. 49). It is clear that Shrum was not denied access to mental health care but preferred to treat with "someone [he] was comfortable seeing." (Doc. 23, p. 4). Per DOC policy, Shrum was treated by the psychologist assigned to his housing block—Defendant Stempien—and he was not allowed to be treated by a different psychologist. Shrum's dissatisfaction with the assigned psychologist does not amount to a constitutional violation. Likewise, Shrum's argument that he would have the right to choose his own psychologist if he was not incarcerated and was an individual in society, is unavailing. (*See* Doc. 23, p. 5).

Even when reading the complaint and supplement in the most favorable light to Shrum, he fails to state an actionable constitutional claim against Defendant Stempien for deliberate indifference to a serious medical need. Rather, Shrum alleges that Defendant

Stempien refused to change his medication, refused to place him in a secure location, and refused to assign a different psychologist.  These allegations do not rise to the level of a constitutional violation, but rather are indicative of a difference of opinion as to treatment. The Court will dismiss this claim but grant Shrum leave to amend to adequately state an Eighth Amendment claim.

### 2.   *First Amendment Retaliation Claim*

Shrum alleges that Defendant Stempien is responsible for the rejection of his job application.  (Doc. 7 ¶ 40).  He avers that Defendant Stempien's conduct constituted "retaliation against him because he was sent to the Restricted Housing Unit because of his mental health breakdown back in 2018."  (*Id.*).

The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. CONST. amend I.  To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  *Id.* (quoting *Suppon v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to

discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Health Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[4]  *See Lape v. Pennsylvania*, 157 F. App'x. 491, 498 (3d Cir. 2005).

Once the plaintiff has made a prima facie case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest."  *Carter v. McGrady*, 292 F.3d 152, 158 (3d. Cir. 2002) (internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.  *Rauser*, 241 F.3d at 334.

As to the first element of *Rauser*, Shrum has failed to establish that he was engaged in any constitutionally protected activity.  Shrum's filing of a job application is not constitutionally protected conduct because "[t]raditionally, prisoners have had no entitlement to a specific job, or even to any job."  *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989).  Additionally, Shrum's claim that he had a constitutional right to remain out of the RHU is not constitutionally protected activity because "there is no constitutional right to remain in the general prison population."  *Bracey v. Sec'y Pa. Dep't of Corr.*, 686 F. App'x 130, 135 (3d

---

[4]     Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  *Krouse v. American Sterlizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

Cir. 2017).  As such, this Court is not satisfied that the first *Rauser* requirement—that

plaintiff show that he was engaged in a constitutionally protected activity—was arguably

met.

In analyzing the second element of *Rauser*, Shrum must show that there was an

adverse action by prison officials sufficient to deter a person of ordinary firmness from

exercising his constitutional rights.  *Rauser*, 241 F.3d at 333.  In accepting as true all factual

allegations set forth in the complaint and supplement, it is clear that Shrum also fails to

meet the second *Rauser* element.  Shrum asserts that he suffered adverse action in the

form of being denied a prison job.  As stated, inmates do not have a liberty or property

interest in their job assignments. *See James*, 866 F.2d at 629-30.  Moreover, Shrum failed

to establish that Defendant Stempien was personally involved in the decision to deny his

application for employment.

The third *Rauser* prong requires a prisoner to prove that his constitutionally protected

conduct was a substantial or motivating factor in the decision to discipline him.  Despite a

liberal review of the complaint and supplement, it is apparent that Shrum's alleged

participation in constitutionally protected conduct was not a substantial or motivating factor

in the decision to deny him employment.  On the contrary, prison officials advised Shrum

that he did not meet the requirements for the janitor job in the medical department.  (Doc. 7

¶ 41; Doc. 7, p. 41).  Specifically, Shrum was not eligible for the position of medical janitor

because, in order to have a job in medical, the inmate must be a custody level 2, and Shrum

was a custody level 3.  (Doc. 7-1, p. 41, 43).  Moreover, Shrum was informed the Defendant

Stempien is not responsible for assigning jobs.  (Doc. 7, p. 41).  Defendants' request for

dismissal of the retaliation claim against Cherri Stempien will be granted.

### B.    Claims against Defendants Wetzel, Mason, and Mahally

The Corrections Defendants argue that Shrum fails to state a claim against Wetzel,

Mason, and Mahally because they lack personal involvement in the alleged wrongs, the

allegations against them are based on the doctrine of *respondeat superior*, and participation

in the grievance process does not establish personal involvement.  (Doc. 19, pp. 18-19).

Individual liability can be imposed under section 1983 only if the state actor played

an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the

operation of respondeat superior."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)

(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  "A defendant in a civil

rights action must have personal involvement in the alleged wrongs. . . .  Personal

involvement can be shown through allegations of personal direction or of actual knowledge

and acquiescence."  *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362

(1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must

be made with appropriate particularity in that a complaint must allege the particulars of

conduct, time, place, and person responsible.  *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at

1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge

or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  *Rode*, 845 F.2d at 1208.

Shrum alleges that Secretary Wetzel "is legally responsible" for "all operations of the Department" and that Superintendent Mason "is legally responsible for the operation of SCI-Retreat." (Doc. 7 ¶¶ 5, 6).  It is clear that Shrum attempts to hold Defendants Wetzel and Mason liable for the actions of their subordinates, based on their supervisory roles.  It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*.  *See Rode*, 845 F.2d at 1207. Accordingly, the claims against Defendants Wetzel and Mason will be dismissed to the extent that Shrum's claims against them rely on a *respondeat superior* theory of liability.

Shrum next alleges that Defendant Mahally is the grievance coordinator at SCI-Retreat and she "is responsible for all answers to grievances." (Doc. 7 ¶ 13).  He likewise asserts that Defendant Mason responded to his grievances and participated in the administrative remedy process.  (*Id.* at ¶ 42).  The filing of a grievance is not sufficient to show the actual knowledge required for personal involvement.  It has long been recognized that a state prisoner's allegation that prison officials and administrators responded inappropriately or failed to respond to a prisoner's complaint or grievance, is insufficient to establish personal involvement in the underlying unconstitutional conduct.  *See Rode*, 845 F.2d at 1207-1208 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Simonton*

*v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an

inmate's grievance or appeal is not sufficient to demonstrate the personal involvement

required to establish the deprivation of a constitutional right"); *Brooks v. Beard*, 167 F. App'x

923, 925 (3d Cir. 2006).  In accordance with the foregoing, any attempt by Shrum to

establish liability against Defendants Mahally and Mason based upon their responses to

grievances does not support a constitutional claim.  *See Alexander v. Gennarini*, 144 F.

App'x 924, 925 (3d Cir. 2005).  Defendants' motion will be granted on this ground as well.

C.      **Claims against Defendants Kirschner, Potsko, and Innis**

1.      ***Federal Rule of Civil Procedure 20***

The Corrections Defendants first seek to dismiss the claims against Kirschner,

Potsko, and Inniss pursuant to Federal Rule of Civil Procedure 20.  (Doc. 21, pp. 13-14, 16-

17).

Rules 18 and 20 of the Federal Rules of Civil Procedure explain the circumstances in

which multiple claims and multiple defendants may be joined.  Rule 18 states that a party

"may join . . . as many claims as it has against an opposing party."  FED. R. CIV. P. 18(a).

Thus, when an action involves only one defendant, a plaintiff may assert every claim he has

against that defendant, regardless of whether the claims are factually or legally related to

one another, subject only to the limits of federal subject-matter jurisdiction.  *See* 7 CHARLES

ALAN WRIGHT & ARTHUR MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 1582 (3d ed.

2019); *see also* FED. R. CIV. P. 18(a).

However, when a plaintiff seeks to assert claims against *multiple* defendants, Rule 20 also comes into play. *See* WRIGHT & MILLER, *supra*, § 1655. Rule 20 governs permissive joinder of parties and explains that a plaintiff may only join multiple defendants in a single case if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). In other words, notwithstanding the broad joinder-of-claims language of Rule 18(a), a plaintiff may join multiple defendants in a single complaint only if he asserts at least one claim linking *all* defendants that (1) arises out of the same transaction or occurrence and (2) involves a common question of law or fact. *Id.*; WRIGHT & MILLER, *supra*, § 1655. That is, there must be at least one common claim against all named defendants. Once a plaintiff satisfies this requirement, he may invoke Rule 18 to assert "as many claims as [he] has" against one or more defendants, even if those additional claims are unrelated to the common claim linking all defendants. *See* FED. R. CIV. P. 18(a); WRIGHT & MILLER, *supra*, § 1655.

Here, Shrum alleges that Defendants Kirschner and Potsko verbally harassed him, exposed his mental health diagnosis to other inmates, and that Potsko told other inmates that Shrum was a pedophile. (Doc. 7 ¶¶ 16, 32). Shrum also alleges that Defendant Inniss pressured him to withdraw grievances against Defendant Potsko, and that Inniss harassed him after he withdrew the grievances. (*Id.* at ¶¶ 35, 36).

While the Court acknowledges that the core allegations of the complaint and supplement pertain to Shrum's mental health treatment at SCI-Retreat, the claims against Kirschner, Potsko, and Inniss relate to their purported treatment towards him due to his mental health illness.  The Court is constrained to conclude that in the interest of judicial economy, and because the allegations against Kirschner, Potsko, and Inniss involve offshoots of the same basic factual controversy between the parties, the Court will deny the Corrections Defendants' motion to dismiss the claims against Kirschner, Potsko, and Inniss pursuant to Federal Rule of Civil Procedure 20.

### 2.   *Defendants Kirschner and Potsko*

Shrum alleges that Defendant Kirschner and Potsko harassed him due to his mental health breakdowns, belittled him, called him names, and exposed his mental health diagnosis to other inmates.  (Doc. 7 ¶¶ 16, 23, 24).  Defendants' alleged statements to Shrum, without any accompanying physical injury, do not amount to malicious behavior violative of the Eighth Amendment.  *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) ("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment.").  Shrum does not assert that he suffered any physical injury or that Defendants Kirschner and Potsko used any physical force on him.  This claim fails because Shrum cannot state a claim for cruel and unusual punishment under the Eighth Amendment by alleging only verbal harassment or threats.  The Court will dismiss this claim but grant Shrum leave to amend to adequately state a cognizable Eighth Amendment claim.

Shrum also alleges that Defendant Potsko told inmates in the RHU that Shrum was a pedophile. (Doc. 7 ¶ 32). Such labels can lead to a substantial risk of serious harm to the prisoner. *Renchenski v. Williams*, 622 F.3d 315, 326 (2010) (stating that "[i]t is largely without question . . . that the sex offender label severely stigmatizes an individual, and that a prisoner labeled as a sex offender faces unique challenges in the prison environment"). Shrum does not allege that any other inmates spread this information in the prison, or that he was threatened or physically attacked by other inmates due to Defendant Potsko's statements. The Court will grant Defendants' motion to dismiss this claim and grant Shrum leave to amend.

### 3.   *Defendant Inniss*

Shrum alleges that Defendant Inniss told him that "things will get real rough for the plaintiff on the block if he did not sign off on two of the four grievances against Thomas Postco and staff" and that Defendant Inniss harassed him. (Doc. 7 ¶¶ 35, 36). As stated, verbal threats do not amount to malicious behavior violative of the Eighth Amendment without any accompanying physical injury. *See Dunbar*, 487 F. App'x at 723. Shrum does not allege that Defendant Inniss had any physical contact with him or that he suffered any physical injuries the hands of Defendant Inniss. Moreover, Shrum's allegation that Inniss threatened him to withdraw grievances is insufficient to state a constitutional claim because inmates do not have a constitutionally protected right to prison grievance procedures. *See*

*Travillion v. Leon*, 248 F. App'x 353, 356 (3d Cir. 2007).  For these reasons, the Court will dismiss the claims against Defendant Inniss with leave to amend.

**IV.**    **Leave to Amend**

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  For the reasons set forth above, Shrum's claims against Defendants Wetzel, Mason, and Mahally are legally and factually flawed; thus, the Court concludes that curative amendment would be futile with respect to these three Defendants.  However, Shrum will be afforded an opportunity to amend his claims against Defendants Stempien, Kirschner, Potsko, and Inniss in accordance with this Memorandum.

**V.**    **Conclusion**

The Court will grant the Corrections Defendants' motion (Doc. 20) to dismiss.  The Court will grant Shrum an opportunity to file an amended complaint in the event he can state a plausible claim for relief against Defendants Stempien, Kirschner, Potsko, and Inniss. Failure to file an amended complaint will result in dismissal of this action.

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: March _____, 2021